## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CRISTINA VANASE, | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| | : | |
| vs. | : | |
| | : | |
| XPO LAST MILE, INC., | : | |
| | : | |
| Defendant. | : | June 22, 2018 |

**Jury Trial Demanded**

## COMPLAINT

Plaintiff, Cristina Vanase, by and through her attorneys, Sabatini and Associates, LLC, complaining of the defendant, XPO Last Mile, Inc., respectfully alleges:

## PARTIES

1.      Plaintiff, Cristina Vanase, was and is a citizen and resident of the State of Connecticut.

2.      Defendant, XPO Last Mile, Inc., was and is a corporation organized and existing under the laws of the State of Georgia with a principal place of business located at 1851 West Oak Parkway, Suite 100, Marietta, Georgia 30062.

3.      At all times material, plaintiff was an employee within the meaning of the ADA Amendments Act of 2008 (ADAAA).

4.      At all times material, defendant was an employer within the meaning of the ADAAA.

5.      At all times material, plaintiff was an employee within the meaning of the Connecticut Fair Employment Practices Act (CFEPA) C.G.S. §46a-60(a) *et seq.*

6.      At all times material, defendant was and employer within the meaning of

the Connecticut Fair Employment Practices Act (CFEPA) C.G.S. §46a-60(a) *et seq.*

7.     At all times material, plaintiff was an eligible employee as that term is defined by the Family and Medical Leave Act of 1993 (FMLA).

8.     At all times material, defendant employed fifty (50) or more employees at plaintiff's former worksite for twenty or more weeks in 2015 and 2016 in an industry affecting interstate commerce.   Accordingly, defendant is an employer covered by the FMLA.

9.     At all times material, plaintiff was an employee within the meaning of Tile VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.

10.     At all times material, defendant is an employer within the meaning of: Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.


## JURISDICTION AND VENUE

11.     The Court has jurisdiction pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343 and this action is brought pursuant to: The Americans with Disabilities Act Amendments Act of 2008, cited as 42 U.S.C. §12101.

12.     This Court has personal jurisdiction over the Parties and venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in the State of Connecticut.

13.     The Court has pendent jurisdiction over the state law claims.

## GENERAL ALLEGATIONS

14.     Defendant employed plaintiff.

15.     Defendant hired plaintiff on or about May 7, 2015.

16.     Plaintiff's job title was operation manager.

17.     Plaintiff was qualified for the job.

18.     Defendant conducted a 2015 performance evaluation of the plaintiff.

19.     The performance evaluation was documented by the defendant.

20.     The performance evaluation found plaintiff's overall job performance to be "meets expectations/fully performing."

21.     Defendant placed plaintiff at Bob's Furniture Warehouse located in Taftville, Connecticut.

22.     Plaintiff is female.

23.     Defendant employs James Kinney.

24.     Kinney's job title is Market Vice President.

25.     Kinney is a supervisory employee.

26.     Defendant employs Cristino Soto-Quiles.

27.     Soto-Quiles' job title is Assistant Manager.

28.     Soto-Quiles is a supervisory employee.

29.     Plaintiff was a supervisory employee.

30.     Kinney was plaintiff's supervisor.

31.     Kinney did not make the decision to hire plaintiff.

32.     In or about February 2016, plaintiff notified Kinney that she would to take a leave of absence in order to undergo surgery in April 2016.

33.     Defendant received a doctor's note dated March 9, 2016 stating that plaintiff was under the doctor's care; she would be undergoing a medically necessary surgery on April 1, 2016; and would remain out of work from April 1, 2016 through May

3

2, 2016.

34.   On April 1, 2016, plaintiff underwent surgery.

35.   On or about April 4, 2016, Soto-Quiles came to the hospital where plaintiff was recovering from surgery and handed a company laptop computer to the plaintiff so she could perform work for the defendant.

36.   Plaintiff worked while in the hospital.

37.   Plaintiff returned to work about two (2) weeks earlier than her original date of return.

38.   Defendant received a doctor's note dated April 21, 2016 stating that she was allowed to return to work on May 1, 2016; she is allowed to lift, push and pull no more than ten (10) pounds; it was preferable for her to return to work for half days for two (2) weeks); and it was imperative that she had limited walking.

39.   The April 21, 2016 doctor's note also stated that plaintiff may return to work earlier if she felt capable to do so.

40.   In April 2016, plaintiff learned that her job was posted on indeed.com and on the company's website.

41.   Soto-Quiles informed plaintiff about the job post.

42.   Plaintiff informed Kinney that she was aware of the job posting.

43.   Kinney told plaintiff that he got nervous that she was not coming back to work and that he had pushed to hire for the assistant position as opposed to plaintiff's position.

44.   At no time did plaintiff inform Kinney that she was not going to return to work following the surgery.

4

45.     Kinney had interviewed a candidate for plaintiff's job after learning that she was going to be out a leave of absence for the April 1, 2016 surgery.

46.     In June 2016, plaintiff notified Kinney that she needed to take a short period of time off from work in August 2016 to undergo surgery.

47.     Following the notification of the August 2016 surgery, plaintiff, while looking for a Furniture Service Tech on the company's internal job posting site, discovered her own job position posted.

48.     Plaintiff asked Kinney about the posting.

49.     Kinney told plaintiff that he did not post it and human resources posted it.

50.     This was the second time, to plaintiff's knowledge, that defendant had posted for plaintiff's job position.

51.     Plaintiff underwent surgery on August 12, 2016.

52.     On August 16, 2016, plaintiff returned to work.

53.     When she returned, plaintiff discovered that her job had been posted again.

54.     Plaintiff brought the job posting to Kinney's attention.

55.     Kinney shrugged it off.

56.     On or about October 12, 2016, plaintiff informed Kinney that she had bronchitis and needed to take a few days off from work.

57.     On or about October, plaintiff discovered her job posted (now for the fourth time) on the company's website.

58.     On or about October 19, 2016, plaintiff texted Kinney that she would be absent from work (until Monday – October 24) because of the bronchitis. Plaintiff also

texted Kinney about her other doctor advising her to complete a FMLA form (the other doctor was her surgeon).

59.     On October 25, 2016, Kinney met with plaintiff at defendant's office and told plaintiff: "we need to change"; "we are going to pay for your time off and give you a six week package."

60.     Plaintiff then asked Kinney if she was being terminated.

61.     Kinney's response was "yes".

62.     Plaintiff then called defendant's human resources and spoked to Latice Gardner.

63.     Defendant employs Gardner.

64.     Gardner is a human resources employee.

65.     Gardner told plaintiff that Kinney had "a hard time with the decision".

66.     Gardner told plaintiff that she was being terminated for receiving a 90 day notice and not developing her assistant manager.

67.     Plaintiff received the ninety (90) day notice while in the hospital recovering from surgery.

68.     Plaintiff had a third surgery scheduled for December 9, 2016.

69.     On or about September 2016, plaintiff notified Kinney of her need to undergo a third surgery.

70.     In October 2016, plaintiff told Kinney that she intended to take a leave of absence to undergo the third surgery and the leave of absence was planned for November 21 through December 12.

71.     Defendant terminated plaintiff's employment on or about October 25,

2016.

72.   Kinney made the following comment to plaintiff" "What kind of bitch are you going to be today".

73.   In November 2009, plaintiff developed a painful left breast mass.

74.   Plaintiff underwent a left breast lumpectomy with pathology revealing PASH along with benign microcalcifications.

75.   Plaintiff has multiple relatives who have had breast cancer.

76.   Because of the diagnosis and the family history, plaintiff elected to proceed with bilateral prophylactic mastectomies.

77.   In November 2010, plaintiff underwent bilateral mastectomies.

78.   The human female breast is the tissue overlying the chest (pectoral) muscles.

79.   Females breasts are made of specialized tissue that produced milk (glandular tissue) as well as fatty tissues.

80.   The milk producing part of the breast is organized into 15 to 20 sections, called lobes.

81.   The loss of female breasts is a physical impairment as it substantially limits the operation of a major bodily function.

82.   The surgeries plaintiff underwent in 2016 were related to the double mastectomy she underwent in 2010.

83.   Plaintiff underwent bilateral breast reconstruction.

84.   Plaintiff had a history of bilateral breast disease; acquire absence of bilateral breasts; bilateral breast pain; and pseudoangiomatous stromal hyperplasia

7

(PASH).

85.     The bilateral reconstructed breasts were causing pain.

86.     Because of the pain, plaintiff underwent the removal of the bilateral implants followed by microsurgical reconstruction of the bilateral breasts.

87.     The chronic pain substantially limited one or more major life activity including concentration.

88.     Defendant was aware of plaintiff's bilateral reconstruction.

89.     Defendant regarded plaintiff as being disabled.

90.     Without the benefit of the 2016 surgeries, plaintiff would continue to suffer from physical pain and thus suffer from a chronic condition.

91.     Plaintiff can perform the essential functions of her job with or without a reasonable accommodation.

92.     On or about November 1, 2016, plaintiff filed a complaint against defendant with the State of Connecticut Commission on Human Rights and Opportunities (CHRO).

93.     On or about November 1, 2016, plaintiff filed a complaint against defendant with the Equal Employment Opportunity Commission (EEOC).

94.     On or about April 16, 2018, plaintiff received a Release of Jurisdiction from the CHRO (copy attached hereto as Ex.1).

95.     On or about June 6, 2018, plaintiff received a right to sue letter from the EEOC. (copy attached hereto as Ex.2).

## FIRST COUNT
### (Disability Discrimination in Violation of the ADAAA)

1.     Plaintiff repeats the allegations in paragraphs 1 through 95 above as if

fully incorporated herein.

96.     Defendant's actions violate The Americans with Disabilities Act Amendments Act of 2008, which prohibits discrimination on the basis of disability.

97.     Defendant, by and through its agents and/or employees, violated the Americans With Disabilities Act, in one or more of the following ways:

(a)     In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's disability;

(b)     In that defendant discriminated against the plaintiff in such a way that it adversely affected her status as an employee;

(c)     In that defendant terminated plaintiff's employment;

(d)     In that defendant treated the plaintiff adversely different from similarly situated employees;

(e)     In that defendant discriminated against the plaintiff for requiring a reasonable accommodation;

(f)     In that defendant terminated the plaintiff for requiring a leave of absence notwithstanding the fact the leave of absence was a reasonable accommodation;

(g)     In that defendant intentionally discriminated against the plaintiff.

98.     As a direct and proximate result of defendant's unequal treatment and discrimination, plaintiff has been deprived of his employment and equal employment opportunities because of his disability.

99.     As a further direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income, wages, and benefits.

100.    As a further result of defendant's termination and discrimination of the

plaintiff, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

101.    Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

102.    The defendant exhibited reckless indifference to the plaintiff's civil rights by terminating her employment on the basis of her disability.

**SECOND COUNT**
**(Disability Discrimination in Violation of C.G.S. §46a-60(a)(1))**

1.      Plaintiff repeats the allegations in paragraphs 1 through 102 above as if fully incorporated herein.

103.    Defendant, by and through its agents, servants, and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. §46a-60a *et seq.* in one or more of the following ways.

(a)     In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's disability;

(b)     In that defendant discriminated against the plaintiff in such a way that adversely affected her status as an employee;

(c)     In that defendant treated the plaintiff adversely different from similarly situated employees;

(d)     In that defendant terminated plaintiff's employment on account of her disability;

(e)     In that defendant intentionally discriminated against the plaintiff;

10

(f)     In that defendant discriminated against the plaintiff for requiring a reasonable accommodation;

(g)     In that defendant terminated plaintiff's employment because of the leave of absence due to her disability notwithstanding the fact that the leave of absence was a reasonable accommodation.

104.     As a direct and proximate result of defendant's unequal treatment and discrimination, plaintiff has been deprived of her employment and equal employment opportunities because of his disability.

105.     As a direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income, wages, and benefits.

106.     As a further result of defendant's termination and discrimination of the plaintiff, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

107.     Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

## THIRD COUNT
### (Failure to Accommodate in Violation of the ADA Amendments Act of 2008)

1.     Plaintiff repeats and re-alleges the allegations set forth above in Paragraphs 1 through 107 as though fully set forth herein.

108.     Defendant, by and through its agents, servants, and/or employees, violated the ADA Amendments Act of 2008 in one or more of the following ways.

(a)     In that defendant failed to provide the plaintiff with a reasonable accommodation;

(b)     In that defendant denied the plaintiff a reasonable accommodation;

(c)     In that defendant failed to initiate an interactive reasonable accommodation process with the plaintiff;

(d)     In that defendant failed to engage in an interactive reasonable accommodation process with the plaintiff; and

(e)     In that defendant effectively denied a reasonable accommodation by terminating plaintiff in advance of her leave of absence to undergo a third disability-related surgery in 2016.

109.    As a direct and proximate result of defendant's reasonable accommodation denial, plaintiff has been deprived of work and equal employment opportunities because of his disability.

110.    As a further direct and proximate result of defendant's failure to accommodate, plaintiff has been deprived of income and wages, and has been deprived of access of certain benefits to which she was entitled under defendant's employee benefits plan, and interest.

111.    As a further result of defendant's failure to accommodate, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

112.    Plaintiff has suffered and will continue to suffer injuries and losses as a

12

result of defendant's wrongful and discriminatory acts.

113.    The defendant exhibited reckless indifference to the plaintiff's civil rights.

## FOURTH COUNT
### (Failure to Accommodate in Violation of C.G.S. §46a-60(a)(1))

1.    Plaintiff repeats and re-alleges the allegations set forth above in Paragraphs 1 through 113 as though fully set forth herein.

114.    Defendant, by and through its agents, servants, and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. §46a-60a *et seq.* in one or more of the following ways:

(a)    In that defendant failed to provide the plaintiff with a reasonable accommodation;

(b)    In that defendant denied the plaintiff a reasonable accommodation;

(c)    In that defendant failed to initiate an interactive reasonable accommodation process with the plaintiff;

(d)    In that defendant failed to engage in an interactive reasonable accommodation process with the plaintiff; and

(e)    In that defendant effectively denied a reasonable accommodation by terminating plaintiff in advance of the leave of absence for the third disability-related surgery in 2016.

115.    As a direct and proximate result of defendant's failure to accommodate, and termination, plaintiff has been deprived of work and equal employment opportunities because of his disability.

116.    As a further direct and proximate result of defendant's failure to accommodate, plaintiff has been deprived of income and wages, and has been deprived of

access of certain benefits to which she was entitled under defendant's employee benefits plan, and interest.

117.    As a further result of defendant's failure to accommodate, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

118.    Plaintiff has suffered and will continue to suffer injuries and losses as a result of defendant's wrongful and discriminatory acts.

## FIFTH COUNT
### (Retaliation in Violation of the ADA)

1.    Plaintiff repeats and re-alleges the allegations set forth above in Paragraphs 1 through 118 as though fully set forth herein.

119.    Defendant, by and through its agents, servants, and/or employees, violated the ADA in one or more of the following ways.

a.    In that defendant retaliated against the plaintiff for requesting a reasonable accommodation.

120.    As a result of defendant's retaliation, plaintiff suffered damages including: loss of income, wages and employee benefits, and harm to his professional reputation.

121.    As a further result of defendant's retaliatory termination, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

122.    Plaintiff has suffered and will continue to suffer injuries as a result of defendant's retaliatory acts.

## SIXTH COUNT
**(Retaliation in Violation of Connecticut Fair Employment Practices Act C.G.S. §46a-60(a)(1) et seq.)**

1.    Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

123.    Defendant, by and through its agents, servants, and/or employees, violated the Connecticut Fair Employment Practices Act C.G.S. §46a-609(a)(1) *et seq.* in one or more of the following ways.

a.    In that defendant retaliated against the plaintiff for requesting a reasonable accommodation.

124.    As a result of defendant's violation of Connecticut Fair Employment Practices Act C.G.S. §46a-60(a)(4), plaintiff suffered damages including: loss of employment, loss of income and wages and benefits, and harm to her professional reputation.

125.    As a further result of defendant's retaliatory termination, plaintiff has suffered emotional pain, suffering, embarrassment, shame, inconvenience, mental anguish, loss of enjoyment of life, impairment of her personal and professional reputation, damage caused by the Plaintiff's loss of insurances and savings and investment opportunities, and other pecuniary and non-pecuniary losses.

126.    Plaintiff has suffered and will continue to suffer injuries as a result of defendant's wrongful and retaliatory acts.

15

## SEVENTH COUNT
### (Interference with the Exercise of Rights under the FMLA)

1.     Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

127.   Plaintiff suffered from a medical condition that constituted a serious health condition as that term is defined by the FMLA.

128.   Defendant, by and through its agents and/or employees, interfered with and violated plaintiff's rights under the FMLA in one or more of the following ways:

(a)     by terminating the plaintiff's employment;

(b)     by denying plaintiff's FMLA rights; and

(c)     by failing to restore the plaintiff to her original job or to an equivalent job in terms of pay, benefits, and other employment terms and conditions; and

(d)     by using the plaintiff's FMLA qualifying leave of absence as a negative factor in its decision to terminate plaintiff's employment.

129.   As a direct and proximate result of defendant's wrongful acts and/or omissions, plaintiff suffered and sustained damages, including but not limited to: lost wages, lost employee and/or retirement benefits, and other expenses and financial losses that would not otherwise have been incurred.

130.    Some or all of defendant's actions have been willful.

## EIGHTH COUNT
### (FMLA Discrimination/Retaliation)

1.     Plaintiff repeats and re-alleges the allegations set forth above as though fully set forth herein.

131.   Plaintiff invoked her right to FMLA-qualifying leave.

16

132.    Defendant, by and through its agents, retaliated against the plaintiff for the exercise or attempted exercise of her rights under the FMLA in one or more of the following ways:

(a)    by terminating plaintiff's employment;

(b)    by treating the plaintiff adversely different from one or more similarly situated employees;

(c)    by using plaintiff's request and/or use of FMLA as a negative factor when making the decision to terminate her plaintiff.

133.    As a direct and proximate result of defendant's retaliation, plaintiff suffered and sustained damages, including but not limited to: lost wages, lost employee benefits, and other expenses and financial losses that would not otherwise have been incurred.

134.    Some or all of defendant's actions have been willful.

## NINTH COUNT
### (Gender Discrimination in Violation of Title VII)

1.    Plaintiff repeats the allegations in paragraphs 1 through 134 above as if fully incorporated herein.

135.    Defendant's actions, by and through its agents and/or employees, violated Title VII of the Civil Rights Act of 1964 as amended, which prohibits discrimination on the basis of gender.

136.    Defendant, by and through its agents, servants, and/or employees, violated the Title VII of the Civil Rights Act of 1964 as amended, in one or more of the following ways.

a.   In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's gender;

b.   In that defendant limited and classified the plaintiff by her gender in such a way that deprived her of her employment and/or employment opportunities;

c.   In that defendant discriminated against the plaintiff in such a way that adversely affected her status as an employee;

d.   In that defendant treated the plaintiff adversely different from similarly situated employees;

e.   In that defendant intentionally discriminated against plaintiff on the basis of gender.

137.   As a direct and proximate result of defendant's discrimination, plaintiff has been deprived of her employment and equal employment opportunities because of her gender.

138.   As a further direct and proximate result of defendant's discrimination of the plaintiff, plaintiff has been deprived of income wages, and certain benefits.

139.   As a further result of defendant's termination of plaintiff, plaintiff has suffered severe humiliation, embarrassment and emotional distress.

140.   Plaintiff has suffered and will continue to suffer injuries as a result of defendant's wrongful and discriminatory acts.

141.   Defendant's termination and unequal treatment of the plaintiff was arbitrary and unreasonably discriminatory all in violation of Title VII of the Civil Rights of 1964 as amended by the Civil Rights Act of 1991, cited as 42 U.S.C. §2000e(k).   The

defendant exhibited reckless indifference to the plaintiff's civil rights by terminating her on the basis of her gender.

### DEMAND FOR RELIEF

WHEREFORE, plaintiff prays for appropriate damages including: compensatory damages; damages for back pay, front pay, bonuses, personal days, lost pension/employee/retirement benefits, consequential damages, emotional distress; punitive damages; reasonable attorneys' fees; costs; interest; job reinstatement; liquidated damages; prejudgment interest; for an injunction requiring the removal of any and all adverse information contained in plaintiff's personnel file; for a trial by jury; and for all other just and proper relief.

Dated:   June 22, 2018

_____
James V. Sabatini, Esq. ct19899
SABATINI AND ASSOCIATES, LLC
1 Market Square
Newington, CT 06111
Tel. No.: (860) 667-0839
Fax No.: (860) 667-0867
Email: jsabatini@sabatinilaw.com

ATTORNEY FOR PLAINTIFF

# EXHIBIT 1

# STATE OF CONNECTICUT
# COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

<u>Cristina Vanase</u>
**COMPLAINANT**

vs.

<u>XPO Last Mile, Inc.</u>
**RESPONDENT**

CHRO No. 1740179
EEOC No.  16A201700164

## RELEASE OF JURISDICTION

The Commission on Human Rights and Opportunities hereby releases its jurisdiction over the above-identified complaint.  The Complainant is authorized to commence a civil action in accordance with CONN. GEN. STAT. § 46a-100 against the Respondent in the Superior Court for the judicial district in which the discriminatory practice is alleged to have occurred, in which the Respondent transacts business or in which the Complainant resides.  If this action involves a state agency or official, it may be brought in the Superior Court for the judicial district of Hartford.

A copy of any civil action brought pursuant to this release must be served on the Commission at ROJ@ct.gov or at 450 Columbus Blvd., Suite 2, Hartford, CT 06103 at the same time all other parties are served.  Electronic service is preferred. **THE COMMISSION MUST BE SERVED BECAUSE IT HAS A RIGHT TO INTERVENE IN ANY ACTION BASED ON A RELEASE OF JURISDICTION PURSUANT TO CONN. GEN. STAT. § 46a-103.**

<u>The Complainant must bring an action in Superior Court within 90 days of receipt of this release and within two years of the date of filing the complaint with the Commission unless circumstances tolling the statute of limitations are present.</u>

*Tanya A. Hughes*

**DATE:  <u>April 16, 2018</u>**

Tanya A. Hughes, Executive Director

cc: Complainant: Cristina Vanase, 109 Branch Hill Road, Preston, CT 06365
    Complainant's Attorney: James Sabatini: jsabatini@sabatinilaw.com
    Respondent: n/a
    Respondent's Attorney: David C. Salazar-Austin: David.Salazar-Austin@jacksonlewis.com
    Case File

# EXHIBIT 2

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

| To: | Cristina Vanase<br>109 Branch Hill Road<br>Norwich, CT 06360 | From: | Boston Area Office<br>John F. Kennedy Fed Bldg<br>Government Ctr, Room 475<br>Boston, MA 02203 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16A-2017-00164 | Amon L. Kinsey, Jr.,<br>Supervisory Investigator | (617) 565-3189 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☐ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☒ Other (briefly state)    **Charging Party is pursuing claims in another forum.**

## - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Feng An, Kenneth*                                    JUN 0 6 2018

Feng K. An,
Area Office Director                                    (Date Mailed)

Enclosures(s)

cc:

LAST MILE
1851 West Oak Parkway
Marietta, GA 30062

James Sabatini, Esq.
Sabatini & Associates
One Market Square
Newington, CT 06111